Brandon J. Mark, USB #10439
Gregory H. Gunn, USB #15610
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: BMark@parsonsbehle.com
　　　　DNeilson@parsonsbehle.com
　　　　GGunn@parsonsbehle.com
　　　　ecf@parsonsbehle.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| HOLLY McCLURE, Individually and as a Parents and Natural Guardian of T.M. and M.M., MARK McCLURE, Individually and as a Parent and Natural Guardian of T.M. and M.M., <br><br>Plaintiffs, <br><br>vs. <br><br>RICHARD SAUNDERS, in his Official Capacity as Executive Director of Utah Department of Health; SUMMIT COUNTY BOARD OF HEALTH; RICHARD BULLOUGH, in his Official Capacity as Health Director of Summit County Health Department; CHRIS CHERNIAK, in his Official Capacity as Chair of Summit County Health Department; DR. SYDNEE DICKSON, in her Official Capacity as State Superintendent of Public Education; PARK CITY SCHOOL DISTRICT; PARK CITY SCHOOL DISTRICT; DR. JILL GILDEA, in her Official Capacity as Superintendent of Park City School District; PARK CITY SCHOOL DISTRICT BOARD; and ANNE PETERS, ANDREW CAPLAN, WENDY CROSSLAND, KARA HENDRICKSON and ERIN GRADY, in their Official Capacities as members of Park City School District Board, <br><br>Defendants. | **DECLARATION OF HOLLY A. MCCLURE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br><br>Case No. 2:21-cv-00148-CMR <br><br>Magistrate Judge Cecilia M. Romero |

I, Holly A. McClure, state as follows:

1. I am over the age of eighteen, and I can and do testify competently based on personal knowledge of the following facts.

2. My husband, Mark McClure, and I have two children, T.M. and M.M., who are both currently enrolled in the Park City School District ("PCSD"). T.M. is currently enrolled in Treasure Mountain Junior High ("TMJH") and M.M. is currently enrolled in Park City High

School ("PCHS").

3.  Mark and I take an active role in our children's education. We strongly believe that in-person schooling is the best option for our children and have long pushed for in-person schooling for our children.

4.  Mark and I strongly believe and zealously protect our right to direct the medical care and medical-decision power that is inherently and legally provided to all parents.

5.  On January 12, 2021, Mark and I were notified by TMJH, PCHS, and the PCSD that TMJH and PCHS had exceeded the state-defined threshold of fifteen (15) positive cases of COVID-19 at each campus, and therefore would be going to remote learning for a period of ten (10) days, and, upon return from remote learning, would be implementing the state's "Test to Stay" program for families who wanted their children to continue with in-person learning. We were further informed that Test to Stay would be implemented as an addition to the existing measures implemented at the start of the school year, specifically "stop the spread"—masking, social distancing, increased cleaning of high touch surfaces, quarantining students who have tested positive for COVID-19, and contact tracing. (*See* Email from Mr. Caleb Fine, principal of Treasure Mountain Junior High, Jan. 12, 2021, attached hereto as Exhibit 1; Email from Park City School District, Jan. 12, 2021, attached hereto as Exhibit 2.)

6.  Mark and I were notified that under the Test to Stay program, every student at TMJH and PCHS would have to be tested every fourteen (14) days. We were notified that TMJH would test 100 students per school day and that PCHS would test 150 students per school day. The Test to Stay program would only be implemented at these two schools in PCSD. (*See* Exh. 2, at 2–3; Email from Treasure Mountain Junior High, Jan. 13, 2021, attached as Exhibit 3; Email from Park City High School, Jan. 15, 2021, attached as Exhibit 4; Email from Treasure Mountain Junior

3

High, Jan. 15, 2021, attached as Exhibit 5; Email from Treasure Mountain Junior High, Jan. 20, 2021, attached as Exhibit 6.)

7. Mark and I are uncomfortable with the compelled nature of Utah's Test to Stay protocols and have many concerns. Specifically:

    a.    Who is receiving the medical information contained in both the consent form and the medical information generated by these continuing COVID-19 tests?

    b.    Which testing facilities are performing the tests?

    c.    What genes are detected to be considered positive for COVID-19?

    d.    What controls are in place to confirm a "positive" COVID-19 test?

    e.    Are all the testing facilities following a standard protocol, and if yes, what is that protocol?

    f.    How does the test determine infectiousness?

    g.    How did the State of Utah and Utah Department of Health decide on the "15 case outbreak threshold" and why is that a meaningful metric?

    h.    Does the 15-case outbreak threshold consider false positives?

    i.    Why is the State of Utah unnecessarily hampering children's education when children are the least likely to be impacted from a positive COVID-19 test?

    j.    Why is the State of Utah allowed to determine who is "sick" even when those children have no symptoms, taking this decision out of the hands of their parents?

    k.    Why has the State of Utah never measured or considered the role of natural immunity in "stopping the spread" of COVID-19?

l.       How does the Test to Stay testing program measure or account for natural immunity—either pre-existing cross-reactive immunity from other coronaviruses or acquired immunity from infection with and recovery from COVID-19 more than 90 days after a positive PCR or antigen test?

m.       Where is the State of Utah's evidence that asymptomatic spread is significant among the K-12 cohort and has a clear causal correlation to severe illness in those most at-risk for hospitalization and death?

8.       Between January 20, 2021 and January 23, 2021, through a series of letters and emails, I informed Defendant Dr. Jill Gildea, PCSD Superintendent, Mr. Roger Arbabi, school principal of PCHS, and Mr. Caleb Fine, school principal of TMJH, that Mark and I strongly objected to the compelled testing of our children, and that we did not consent to have T.M. and M.M. tested for COVID-19 at school under the Test to Stay program, nor did we consent to transition to remote learning.

9.       On January 25, 2021, both T.M. and M.M. returned to school with all other students whose families chose in-person learning. Most of the students returning on that day had not yet been tested, as testing would occur over the next fourteen (14) days.

10.      T.M. and M.M. were both scheduled for COVID-19 tests on January 25, 2021. Both T.M. and M.M. missed their appointments. M.M. received official notice of a second testing date of February 8, 2021. (*See* Email from Park City High School, Jan. 22, 2021, attached as Exhibit 7; Email from Treasure Mountain Junior High, Jan. 22, 2021, attached as Exhibit 8; Email from Park City High School, Feb. 5, 2021, attached as Exhibit 9.)

11.      On February 3, 2021, I received a phone call from Mr. Caleb Fine, school principal

for TMJH, notifying me that T.M. had been removed from her class and isolated on campus because of a missed COVID-19 test and our refusal to consent to the continuing COVID-19 testing of T.M. Mr. Fine further notified me that T.M. would be placed in isolation every day that I brought T.M. to school without consenting to the continuing COVID-19 testing.

12. During T.M.'s isolation, T.M. was placed in a room with a teacher and directed to stay there throughout the day. T.M. was informed that she would not be allowed to visit the restroom while other students were present in the hallways and would not be allowed to eat lunch with any students. A computer was set up for T.M. and she was directed to start school through remote learning, even though neither I nor Mark had consented to remote learning.

13. On February 8, 2021, M.M. missed her second COVID-19 test. M.M. was then removed from her class and placed at a desk in a hallway inside the administrative wing of the school. Mr. Roger Arbabi, school principal of PCHS, contacted me and informed me of M.M.'s isolation because of our refusal to consent to continued COVID-19 testing. When I arrived at the school to pick up M.M., Mr. Arbabi notified me that our options were either to consent to the continuing COVID-19 testing or consent to enrollment in distant learning. If we continued to send M.M. to school without consenting to continuing COVID-19 testing, Mr. Arbabi would continue to isolate M.M.

14. Every school day after the isolation of M.M. and T.M., I would send an email to TMJH's and PCHS's attendance email addresses notifying them that we do not consent to remote learning and are participating in remote learning under duress.

15. On February 25, 2021, I received a call from both Mr. Fine, principal of TMJH, and Mr. Arbabi, principal of PCHS, informing me that T.M. and M.M. can return to in-person learning due to a change in the Test to Stay program allowing in-person learning if 60% of the

6

student body is participating in the Test to Stay program.

16. T.M. and M.M. were scheduled COVID-19 test appointments for March 1, 2021. T.M. and M.M. did not show up for their appointments.

I declare under criminal penalty of the State of Utah that the foregoing is true and correct.

DATED March 10, 2021.

/s/ *Holly A. McClure*
_____
Holly A. McClure

(*Electronic signature affixed with permission on file with filing attorney*)